**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MARCO MALDONADO,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | **No. 2:22-cv-3474** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of Defendants' Motion to Dismiss the Complaint, Plaintiff's Response in Opposition, and Defendants' Reply, and for good cause shown, it is **HEREBY ORDERED** that the Motion to Dismiss is **GRANTED** and that Plaintiff's Complaint is **DISMISSED**.

BY THE COURT:

_____
KENNEY, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCO MALDONADO, | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No. 2:22-cv-3474 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants | : | |
| | : | |

### DEFENDANTS CITY OF PHILADELPHIA, MICHAEL CAHILL, HERBERTO APONTE, BRUCE DOUGHERTY, BRUCE DENOBLE, ROBERT AHRNDT, JOHN BROADBENT and RICHARD HENDERSON'S MOTION TO DISMISS

Defendants City of Philadelphia, Michael Cahill, Herberto Aponte, Bruce Dougherty, Bruce Denoble, Robert Ahrndt, John Broadbent and Richard Henderson, by and through the undersigned counsel, hereby move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support of this motion, Defendants incorporate the attached memorandum of law.

Defendants respectfully request that this Court dismiss the Complaint because Plaintiff's guilty plea to third-degree murder for the death that was the subject of his original second-degree murder conviction bars recovery via a Section 1983 claim.  In the alternative, Defendants respectfully request that the Complaint be dismissed for failure to sufficiently allege facts that could establish the personal involvement of all named defendants in the claimed harms; facts that establish a denial of a fair trial; facts that establish a claim for civil rights conspiracy; or facts sufficient to place the City on notice of the actual claim being made against it.

Beyond the factual deficiencies, Defendants submit the following claims should be

dismissed as legally unsupported:

- Count III, the failure to intervene claim, be dismissed because the Defendants are entitled to qualified immunity;

- Count IV, the municipal liability claim, be dismissed to the extent it seeks relief for claims that are derivative of constitutional rights that were not clearly established at the time of the alleged conduct.

Date:  November 4, 2022

Respectfully submitted,

/s/ *Danielle E. Walsh*
Danielle E. Walsh
Divisional Deputy City Solicitor
Pa. Attorney ID No. 312438
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-686-0464 (phone) / 215-683-5397 (fax)
danielle.walsh@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCO MALDONADO,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | No. 2:22-cv-3474 |
| | : | |
| v. | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants | : | |
| | : | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Though Plaintiff Marco Maldonado opens his pleading with the statement that "in October 1993, [he] was wrongfully convicted and sentenced to life for a crime he did not commit[,]" and later states that "he has always maintained that he did not murder Gonzales Sr.", Plaintiff is – and remains – legally convicted of murder for the death of Alberto Gonzales Sr.  He previously pled guilty to second-degree murder for this death.  That second-degree murder conviction was vacated and nolle prossed, and Plaintiff pled nolo contendere to third-degree murder.  Plaintiff served 27 years of incarceration on his second-degree conviction; his third-degree conviction exposed him to a sentence of 10-20 years.

By his sparsely-alleged complaint, Plaintiff seeks to hold seven individuals who were employees of the Philadelphia Police Department, one Assistant District Attorney, and the City of Philadelphia liable under several theories of constitutional harm.  Notably, he brings claims of deprivation of liberty without due process of law and denial of a fair trial under the Fourteenth Amendment (Count I); civil rights conspiracy (Count II); and failure to intervene (Count III).  He seeks to hold the City of Philadelphia liable via a *Monell* claim (Count IV), and brings claims for

compensatory and punitive damages (Counts V and VI).

Defendants now move to dismiss Plaintiff's Complaint, for a myriad of reasons.  First, Plaintiff is barred from seeking relief because the doctrine established by the Supreme Court in *Heck v. Humphrey* precludes civil suits that would, if successful, undermine the validity of a conviction.  Here, Plaintiff's challenge to his second-degree murder conviction, if proved, would necessarily undermine the same universe of facts that substantiate his legal conviction of third-degree murder.  This he cannot do.  Second, Plaintiff fails to allege sufficient facts to establish any of his claims, particularly where, as here, those claims sound in violations of trial rights but Plaintiff pled guilty to second-degree murder when he was originally convicted.  Third, several of Plaintiff's claims also fail, in whole or in part, because the rights he places at issue were not clearly established at the time of the alleged conduct, entitling the Defendants to qualified immunity from liability and dismissal of those claims.  Fourth, Plaintiff fails to state a claim of municipal liability for a host of reasons, including that a claim of municipal liability cannot stand in the absence of alleging an underlying constitutional violation and that a claim cannot be stated where the conduct that forms the basis of it is not the subject of a clearly established constitutional right.  Further, Plaintiff's claim fails because his broadside allegations about generalized wrongs in the Police Department do not actually establish that any such conduct was the moving force of the conduct alleged here.

These deficiencies warrant dismissal of Plaintiff's Complaint.

## I.      Factual and Procedural Background[1]

On December 23, 1992, Alberto Gonzales Jr. found his father, Alberto Gonzales Sr., dead of a gunshot wound and in the second-floor front bedroom of his home, located at 2831 North Orkney Street.  Compl. ¶¶ 8-9.  On the morning of that same day, two police officers independently arrested Plaintiff Marco Maldonado after seeing him remove a handgun from his jacket and toss it into a car – Plaintiff posted bail and was released later that same day.  *Id.* ¶¶ 10-11.  As of December 23, 1992, Plaintiff was only subject to charges arising out of his possession of the firearm.  *See id.*

Plaintiff became a suspect in the murder of Alberto Gonzales Sr. after unnamed police officers interviewed a woman named Mayra Camacho, who claimed to have seen Plaintiff enter Mr. Gonzales's home.  Compl. ¶ 12.  Decades later, Ms. Camacho provided an affidavit recanting her identification of Plaintiff, and explaining that while Plaintiff had been with her that night, she actually saw a man named Nestor Sanchez leave Mr. Gonzales's house, and that Mr. Sanchez had threatened to kill her if she did not implicate Plaintiff in the murder.  *Id.* ¶ 21.  She was also forced to provide a statement to police by Alberto Gonzales Jr., who transported her at gunpoint to the police so that she, in further fear for her life, would implicate Plaintiff in the murder.  *Id.* ¶ 22.  Ms. Camacho stated that Mr. Gonzales Jr. told her he did this because police believed he was a suspect in the crime, a putative lead that Plaintiff did not learn about until Ms. Camacho's September 30, 2017 recantation.  *Id.*; *see also* Aff. of Mayra Comacho, Case No. 17-

---

[1] The following recitation is taken from Plaintiff's Complaint and accepted as true for the limited purposes of this motion to dismiss for failure to state a claim.  *Cudjoe v. Dep't of Veterans' Affairs*, 426 F.3d 241, 244 (3d Cir. 2005); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Defendants do not concede that all the allegations in the Complaint are supported by a factual basis, following a reasonable investigation.

5710, ECF No. 1-5 at 27 of 92.  Plaintiff alleges he was never apprised of the existence of other

suspects, and did not learn of them until Ms. Comacho put pen to paper in 2017.  Compl. ¶ 23.

Plaintiff avers that there was no forensic evidence linking him to the crime, and only the

statement of Ms. Comacho inculpated him.  Compl. ¶ 19.  However, in addition to the

inculpatory testimony of Ms. Comacho, an unnamed woman separately told Officers Ahrdt and

Broadbent that Plaintiff was wanted for murder.  Compl. ¶ 13.  These officers claim to have

chased Plaintiff into an abandoned building after spotting him on the corner of Mutter and

Cambria streets, taking him into custody after this chase.  *Id.*  This took chase purportedly

occurred on December 28, 1992.  *Id.*  Contrary to this representation, Plaintiff contends he was

actually asleep as a result of severe intoxication on that date, at the home of Carmen Whitely.  *Id.*

¶ 14.  Though he does not allege how or from where or by whom he was taken into custody,

Plaintiff avers that police officers arrested him with no warrant in the early hours of December

29, 1992, and questioned him for 18 hours before he confessed to the murder of Gonzales Sr.  *Id.*

¶ 15.  Notwithstanding his contention about the amount of time of his interrogation, Plaintiff

further alleges he has no memory of making a statement to police or signing the confession

(which he did sign) because he was high on PCP and Xanax, and that he was taken into custody

shortly after midnight on December 29, 1992, had an interview begin at 4:30 a.m. that morning,

and signed the statement at 5:45 a.m. (a duration of approximately five hours).  *Id.* ¶¶ 16-18.

Nearly a year later, Plaintiff litigated and lost a motion to suppress.  Compl. ¶ 26.  "Upon

the advice of trial counsel, Plaintiff Maldonado then agreed to plea to Murder in the Second

Degree[,]" which plea he entered into because his attorney was ineffective.  *Id.* ¶¶ 27-28.  Years

later, Plaintiff then entered into an agreement to plead *nolo contendere* to Third Degree Murder

in exchange for the Commonwealth to agree to the vacatur of his conviction of Second Degree

Murder. *Id.* ¶ 35. Plaintiff contends that he is factually innocent of the murder of Alberto Gonzales Sr., suggesting he was not at the location where the murder occurred. *See id.* ¶¶ 16, 21, 31, 37.

Plaintiff now brings suit, seeking redress for alleged violations of his constitutional rights. For clarity, Defendants recap the allegations made about each individual:

(1) Officer Dougherty: arrested Plaintiff for unlawful firearm possession on December 23, 1992, before Plaintiff was suspected of murder. Compl. ¶ 10. There are no other factual allegations about Officer Dougherty's interaction with Plaintiff. *See generally id.*

(2) Officer DeNoble: arrested Plaintiff for unlawful firearm possession on December 23, 1992, before Plaintiff was suspected of murder. Compl. ¶ 10. There are no other factual allegations about Officer DeNoble's interaction with Plaintiff. *See generally id.*

(3) Officer Ahrdt: was told by an unnamed individual that Plaintiff was suspected of murder, and purportedly took him into custody after a foot chase into an abandoned property. Compl. ¶ 13. There are no other factual allegations about Officer Ahrdt's interaction with Plaintiff. *See generally id.*

(4) Officer Broadbent: was told by an unnamed individual that Plaintiff was suspected of murder, and purportedly took him into custody after a foot chase into an abandoned property. Compl. ¶ 13. There are no other factual allegations about Officer Broadbent's interaction with Plaintiff. *See generally id.*

(5) Detective Cahill: interviewed Plaintiff at 4:30 a.m. and obtained a signed statement from him at 5:45 a.m., all during a period that Plaintiff does not remember because he

was severely intoxicated on PCP and Xanax.  Compl. ¶¶ 17-18.  There are no other

factual allegations about Detective Cahill's interaction with Plaintiff.  *See generally*

*id.*

(6) Detective Heriberto Aponte: there are no factual allegations about Detective Aponte

in the Complaint.  *See generally* Compl.

(7) C.E.S. Richard Henderson: there are no factual allegations about C.E.S. Henderson[2]

in the Complaint.  *See generally* Compl.

Consistent with the above recitation, there are no factual allegations that any of the individual

defendants discussed, conferred, or otherwise engaged with each other during the pendency of

the investigation into the murder of Alberto Gonzales Sr.  *See generally* Compl.

Defendants now move to dismiss the Complaint as both factually and legally defective.

## II.      Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's claims are "plausible" if the plaintiff

"pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Id.*  The complaint must present factual allegations that are

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a court must accept

the allegations in the complaint and all reasonable inferences that can be drawn from them as

true and view them in the light most favorable to the plaintiff for purposes of a Rule 12(b)(6)

---

[2] The acronym "C.E.S." is also not defined in the Complaint, but is utilized here consistent with
the verbiage of the caption.

motion, it "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### III.    Argument

In summary form, Plaintiff contends that he was falsely identified as the perpetrator of, and wrongly prosecuted for, a murder which he did not commit, notwithstanding the fact that he remains legally convicted of murder for that same death.  This fact alone precludes Plaintiff from seeking relief in this civil action.

Even if the Court finds that Plaintiff can seek relief despite his conviction for murder, which it should not, Plaintiff's claims should be dismissed because the facts he alleges either establish he is not entitled to relief on some of his claims or are insufficient to state claims for relief against the named defendants.  Several of his claims are also legally unsupported because they seek to vindicate rights that are not clearly established.  For some or all of these reasons, the Court should dismiss Plaintiff's Complaint.

### A.    *Plaintiff's Complaint Should Be Dismissed In Its Entirety, as Plaintiff is Barred from Seeking Relief Because He Is Legally Guilty of Third Degree Murder for the Death of Alberto Gonzales Sr.*

The Court should dismiss this entire case under the Supreme Court doctrine explicated in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Pursuant to *Heck*, "an action seeking damages for an unconstitutional . . . conviction or imprisonment under section 1983 is not cognizable if a judgment in favor of the plaintiff would necessarily <u>imply</u> the invalidity of <u>a</u> conviction or sentence." *Curry v. Yachera*, 835 F.3d 373, 377-378 (3d Cir. 2016) (emphasis added, granting motion to dismiss section 1983 suit based on *Heck*).  This rule exists to promote "finality and consistency," and because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 378.  Moreover, a nolo contendere plea bars a

civil suit under *Heck* in the same way that a guilty plea does, because a "nolo plea is indisputably tantamount to a conviction." *Id.*

While the plaintiff in *Curry* sought damages arising out of the charges of which he remained guilty as a result of his nolo contendere plea, the principles detailed in that case apply with equal force here, where Plaintiff remains legally guilty of a murder, his earlier conviction for which he seeks to challenge by way of this litigation.  By his Complaint, Plaintiff contends that he should never have been arrested and prosecuted for murder – proving his case thus necessarily implies the invalidity of his outstanding conviction for that same murder.  But *Heck* bars the establishment of liability under § 1983 where success would suggest the invalidity of "a" conviction of the plaintiff, not simply "the" conviction.

Notwithstanding the plain language of *Heck*, pursuant to which Plaintiff's Complaint should be dismissed in its entirety, courts in this jurisdiction have considered the application of *Heck* in the context of what are colloquially referred to as "two-conviction cases."  *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420 (E.D. Pa. 2019); *Gladden v. City of Philadelphia*, No. 21-4986, 2022 WL 605445 (E.D. Pa. Feb. 28, 2022).  *Dennis* is the first case in this Circuit in which decisional law from other Circuits regarding two-conviction cases was considered and applied to a Section 1983 suit arising out of a murder conviction that was vacated and the individual subsequently entered a plea to third degree murder. In *Dennis*, the Court categorically declared that an individual who remains convicted of murder of a lesser degree can bring a Section 1983 claim for fabrication of evidence and deliberate deception.  *Dennis*, 379 F. Supp. 3d at 423.  Plainly put, this broad statement of law constituted error.  In particular, the *Dennis* court erred when it concluded that out of circuit authority permitted a claim to go forward where the plaintiff remained legally convicted of a murder but alleged in civil litigation that he was

actually innocent of that same murder. *Dennis*, 379 F. Supp. 3d at 429. And though the *Gladden* court largely adopted the reasoning of *Dennis*, that court at least acknowledged that a plaintiff could not seek to prove facts in a subsequent civil litigation – such as absence from a physical location of a murder for which that individual remains guilty – that would undermine the extant conviction. *Gladden*, 2022 WL 605445, at * 6 n.75.

When viewed correctly, the sister Circuit authority considered by the *Dennis* court – *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014) and *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) – do not suggest that a plaintiff can pursue relief through Section 1983 where, as here, the plaintiff's theory of the case is actual innocence of the underlying murder for which that plaintiff remains convicted. Neither plaintiff in *Jackson* or *Poventud* challenged the factual predicate for his extant conviction, a critical distinction rendering the conclusion that *Heck* did not prohibit recovery in those cases inapplicable to the situation at bar. Indeed, the *Heck* analysis in those cases, applied to the facts alleged and relief sought by Plaintiff, counsels dismissal of this action in its entirety.

*Jackson v. Barnes* arose out of a plaintiff's claim that his due process rights were violated as a result of failures to conform to the warning requirements established by *Miranda v. Arizona*, 384 U.S. 436 (1966). In the *Jackson* case, the plaintiff was convicted of rape and first degree murder. 749 F.3d at 758. His original prosecution included the introduction of statements he had given prior to having been provided "the requisite *Miranda* warnings." *Id.* The state retried Jackson, and he was again convicted of first degree murder. *Id.* at 759. Jackson then filed suit, alleging his Fifth Amendment rights had been violated by the eliciting and subsequent use at trial of un-*Mirandized* statements. *Id.* In considering the defendants' argument that *Heck* barred plaintiff's suit for damages, the Ninth Circuit Court of Appeals found that "the second conviction

9

was insulated from the inculpatory statements that are the subject of Jackson's 1983 suit against Barnes." *Id.* at 760.  As a result of this insulation, "a judgment in Jackson's favor would – far from "necessarily implying" the invalidity of his second conviction – not have any bearing on it." *Id.*  The only issue thus challenged by the plaintiff in *Jackson* was a procedural error that resulted in evidence supporting his conviction for murder that was not introduced during his second trial and conviction for murder.  *See id.*  Of note, the plaintiff did not challenge any of the evidence that formed the foundation of his second conviction for murder.

Similar to the plaintiff in *Jackson*, the plaintiff in *Poventud* did not, by the claims brought in his civil litigation, challenge the evidence supporting his "second" conviction.  The *Poventud* case arose out of the vacatur, as a result of *Brady* violations, of a conviction for attempted murder in the second degree, attempted robbery in the first degree, assault in the first degree, and criminal possess of a weapon in the second degree and a subsequent guilty plea to attempted robbery in the third degree (a nonviolent class E felony).  750 F.3d at 126.  The *Poventud* court found that *Heck* did not bar the plaintiff's claim for damages from the *Brady* violation because the conviction impaired by that *Brady* violation was the earlier, vacated conviction – the second conviction was not affected by that violation and thus not impugned by a claim for damages.  *See id.* at 128-38.  Tellingly, that court further noted that "no element of his § 1983 *Brady* claim requires Poventud to prove his absence from the scene of the crime; if it did, his claim would be *Heck*-barred."  *Id.* at 138.  Thus, to the extent the evidence that was not disclosed in contravention of Poventud's *Brady* rights addressed the nolle prossed weapons, assault, and attempted murder charges, challenging the existence and effect of that evidence would not undermine the validity of his "clean" conviction for attempted robbery.  *See generally id.*

To summarize, these two cases suggest that an individual can pursue a claim for damages

arising out of procedural harms that occurred during the course of an investigation and

subsequent trial.  In *Jackson*, the original harm was the introduction of statements taken from the

defendant prior to issuing his *Miranda* warnings.  In *Poventud*, it was the failure to comply with

*Brady* obligations.[3]  In both these cases, the courts concluded that the second conviction was

already insulated from the procedural harms for which the plaintiff sought money damages, such

that relief for those procedural harms would not suggest the invalidity of that second conviction.

As the *Jackson* court recognized, the compensable injury for that plaintiff might be minimal at

best since he was twice convicted of first degree murder, but the second conviction was free of

the *Miranda* violation that rendered his first conviction invalid.  And as the *Poventud* court

cautioned, a case challenging the factual predicate of the extant conviction would be barred by

*Heck*.

      The violations at issue in the *Jackson* and *Poventud* cases are markedly different from the

factual allegations of wrongdoing presented by way of Plaintiff's Complaint, and the analysis

consequently must also differ.  Indeed, Plaintiff expressly challenges the evidence that was

developed in support of his conviction for the death of Alberto Gonzales Sr. and the probable

cause underpinning his arrest and prosecution for same.  Compl. ¶¶ 10-25.  Throughout his

pleading, Plaintiff contends that he is factually innocent of the murder.  *See id.* ¶¶ 16, 31, 37.  He

further asserts that he was not even at the location of the murder.  *Id.* ¶ 27.

---

[3] Interestingly, the *Poventud* court only considered whether a *Brady* claim could go forward in
the posture of a two-conviction case.  That court separately reiterated that the same procedural
history – vacatur of one conviction and subsequent conviction of a lesser offense arising out of
the same set of operative facts – would not support a malicious prosecution claim because the
convicted individual could not establish a favorable termination.  *Poventud*, 750 F.3d at 130-132.
This raises the interesting but not yet explored issue of what quantum of damages might be
available to a plaintiff pursuing process-based harms, since malicious prosecution is the vehicle
by which liberty deprivation is vindicated and yet *Poventud* suggests such a claim cannot be
maintained where there is no favorable termination.

But Plaintiff is legally convicted of third degree murder for Mr. Gonzales's death.  The Supreme Court has expressly stated that plaintiffs cannot pursue the type of claim Plaintiff here seeks to bring, one of, as he himself alleges, actual innocence of a crime while still convicted, albeit at a lesser degree, *of the same crime*: "a claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  The *Dennis* court found that claims of fabrication of evidence and deliberate deception are process-based claims, like *Brady*, that do not undermine the validity of a second conviction.  *Dennis*, 379 F. Supp. 3d at 430.  But that court did not consider the issue of whether that evidence allegedly fabricated is the core evidence also supporting the second conviction.  *See generally id.*  Such a broad proposition does not apply where, as detailed above, Plaintiff's claims, though couched as procedural due process, actually ground in challenges to the existence and quantum of evidence supporting an existing conviction. *See, e.g.*, Compl.  Such claims are barred by *Heck*, and Plaintiff's Complaint should be dismissed in its entirety.  *See Poventud*, 750 F.3d 127-138.

### B.  Plaintiff Fails to State Any Claim Against the Individual Defendants

#### 1.  Plaintiff Fails to Allege Sufficient Personal Involvement of Any of the Named Defendants and His Complaint Should Be Dismissed

A "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Stated another way, liability for a civil rights claim cannot be imputed vicariously.  *Evancho v. Fisher*, 425 F.3d 347, 353 (3d Cir. 2005).

Instead, an individual defendant must have personal involvement in the alleged constitutional violation. *Id*.

As summarized in the factual recitation above, Plaintiff makes no factual allegations regarding defendants Aponte and Henderson.  He contends that Police Officers Dougherty and DeNoble arrested him on firearms charges before he was even a suspect in the murder; that Police Officers Ahrdt and Broadbent claim to have taken him into custody in a manner that did not happen; and that Detective Cahill interviewed and took a statement from him over a nearly 2-hour period during which Plaintiff was blacked out due to severe intoxication.  Compl. ¶¶ 10, 13, 18.  These are the sum total of the factual allegations about the named defendants, none of which rise to the level of suggesting or stating a claim of constitutional harm.  There is no allegation that the primary inculpatory witness, Marya Camacho, had any contact with any of the defendants prior to giving her statement, or that they influenced it in any way (nor is there any allegation that any of them interacted with her at all).  There is no allegation that any of the named defendants identified Alberto Gonzales Jr. as an alternate suspect, or that any of them did anything with such information.  There is no allegation regarding what role, if any, the defendants' identified actions played in the case development and prosecution.

Plaintiff's sparsely-plead Complaint does not establish the personal involvement of any of the named defendants in a constitutional harm, and it should be dismissed on that alternate basis.

2.  *Count I – Deprivation of a Fair Trial – Fails to State a Claim for Relief as a Matter of Law Because Plaintiff Pled Guilty to Second Degree Murder*

In Count I, Plaintiff brings a claim for deprivation of liberty without due process of law and denial of a fair trial, in contravention of the Fourteenth Amendment.  Compl. ¶¶ 55-58.  He contends that the individual defendants fabricated evidence and engaged in deliberate deception.

13

*Id.* ¶ 56.  The Third Circuit Court of Appeals recognized these as actionable theories of liability in *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014).  But the Court expressly stated the contours of these claims as follows: "we hold that if a defendant has been *convicted at trial* at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted."  *Id.* at 294 (emphasis added); *see also, e.g.*, *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (similarly concluding that a claim of due process violations arising out of fabrication of evidence that "there is a reasonable likelihood the evidence affected the judgment of the *jury*." (emphasis added)).

Plaintiff here did not stand trial, but instead "upon advice of trial counsel, [. . .] agreed to plea to Murder in the Second Degree."  Compl. ¶ 27.  Consistent with the rule announced by the Appellate Court in *Halsey*, Plaintiff thus does not – and cannot – state a claim for relief grounded on theories of fabricated evidence and deliberate deception where he did not stand trial.  Count I should be dismissed.

### 3. *Count II – Civil Rights Conspiracy – Fails Because There Are No Alleged Facts that Establish a Claim for Relief*

The Court explicated the pleading standards applicable to a claim of civil rights conspiracy in *Johnson v. Wetzel*, No. 22-382, 2022 WL 2240072 (E.D. Pa June 22, 2022).  As it explained:

> The elements of a claim of conspiracy to violate federal civil rights are the following: "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs ... any overt act in furtherance of the conspiracy; and, (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under Section 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).  "[T]o properly plead an unconstitutional conspiracy, a plaintiff

must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (quoting *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400-01 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985)).  "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

*Id.* at *4.  Plaintiff's allegation of coordinated action is limited to a generic statement that "the individual defendants  .  .  . agreed among themselves and with other individuals, to act in concert" to deprive Plaintiff of constitutional rights.  Compl. ¶ 60.  Beyond the pleading deficiencies identified above regarding Plaintiff's failure to allege the individuals' personal involvement in any constitutional harm, the Complaint is devoid of any particularized allegations of facts from which an agreement between those individuals could be inferred.  Indeed, there is no factual allegation that the individual Defendants spoke to each other at all, let alone in a manner suggestive of a meeting of the minds.  But "[w]here a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity."  *Wilkins v. Bittenbender*, No. 04-2397, 2006 WL 860140, at *19 (M.D. Pa. Mar. 31, 2006).  In the absence of any such allegations, Plaintiff fails to state a claim of civil rights conspiracy, and this claim should be dismissed.

       4.   *Count III – Failure to Intervene – Should Be Dismissed Because A Constitutional Obligation to Intervene in an Investigation Is Not Clearly Established, Entitling Defendants to Qualified Immunity*

Qualified immunity shields public officials from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct."  *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted).  A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every*

reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted) (emphasis added).  Moreover, a right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  District courts must give serious consideration to qualified immunity arguments made in motions to dismiss, because qualified immunity provides defendants "an entitlement not to . . . face the . . . burdens of litigation." *See Rehiel*, 738 F.3d at 571.  "Accordingly, any claim of qualified immunity must be resolved at the earliest possible stage of the litigation." *Id.* (internal quotations omitted) (reversing district court's denial of a motion to dismiss based on qualified immunity after the district court stated that such immunity "may be clarified by discovery").

In Count Three of his Complaint, Plaintiff seeks to hold all Defendants liable for failure to intervene, contending they all failed to intervene in the deprivation of his right to a fair trial. Compl. ¶¶ 63-66.  However, even as of 2017, this Court has recognized that failure to intervene claims have been brought "almost exclusively" in the context of excessive use of force. *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 672 (E.D. Pa. 2017), *aff'd*, 756 F. App'x 165 (3d Cir. 2018) (citing Third Circuit Model Jury Instruction (Civil) § 4.6.2 (2015) ("A defendant can in appropriate circumstances be held liable for failing to intervene to stop a beating.")).

In *Ekwunife*, this Court expressly declined to rely upon out-of-circuit caselaw from 2011 in which a failure to intervene claim was recognized in the context of unconstitutional interrogations.  245 F. Supp. 3d at 672.  In doing so, the Court refused to expand the claim to cover allegations that a district attorney failed to correct information used to arrest and detain an innocent man. *Id.*  Relying on *Ekwunife*, the Court in *Thorpe* similarly found that "it was not

sufficiently clear that reasonable officers would have understood that failing to intervene when confronted with another's fabrication and withholding of evidence" would violate the plaintiff's constitutional rights.  2020 WL 5217396, at *11; *see also Outlaw*, 2021 WL 3471168 at *7. As concluded by the *Ekwunife*, *Thorpe*, and *Outlaw* courts, a constitutional obligation to intervene in an investigation was not clearly established at the time of the investigation and arrest of Plaintiff.  Qualified immunity thus applies to this claim against the Defendants, and it should be dismissed.

### C.  Plaintiff Fails to State a Claim for Municipal Liability

#### 1.  Plaintiff's Failure to State a Claim Against Any Individual Requires Dismissal of his Derivative Municipal Liability Claim

To state a claim against the City, a plaintiff must show that he suffered a constitutional violation because of the City's custom of acquiescence in Police misconduct.  *See Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020).  As detailed above, Plaintiff fails to establish any of his claims of constitutional harm.  Because there is no stated claim of constitutional harm, Plaintiff also fails to state a claim against the City, and his municipal liability count should be dismissed.

#### 2.  Plaintiff Fails to Plead a Plausible <u>Monell</u> Claim For Any Alleged Constitutional Violation

This Court should dismiss Count IV in its entirety because Plaintiff does not allege facts supporting any single theory of municipal liability, and thus fails to place the City on notice of the actual theory of liability by which Plaintiff seeks recovery.  To be sure, the Complaint references a number of misconduct complaints against the PPD in the 1980s and 90s.  But despite importing a host of alleged wrongs, Plaintiff does not allege facts linking those alleged

wrongs to the constitutional violations he alleges occurred in his case. Accordingly, his municipal liability claim fails.[4]

As a general matter, the liability of a municipality under Section 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Under *Monell,* a municipality cannot be subjected to liability solely because its agents or employees caused injury to another person. *Id.*  Rather, a municipal entity may be liable under Section 1983 only when "execution of a government's policy or custom" deprives a citizen or constitutional rights.  *Id.* at 694.  An official *policy* exists only where a "decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  Alternatively, a municipal *custom* exists where a practice is "so widespread as to have the force of law."  *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brow*n, 520 U.S. 397, 404 (1997).

To prevail on a municipal liability claim based on a municipal policy or custom, a plaintiff must allege that (1) a constitutionally-protected right has been violated, *and* (2) that the alleged violation *resulted from* a municipal policy or custom that exhibits deliberate indifference to rights of citizens.  *Monell*, 436 U.S. at 694–95; *see also Losch v. Borough of Parkesburg, Pa*., 736 F.2d 903, 910 (3d Cir. 1984) (further explaining that "[a] plaintiff must identify the challenged policy [or custom], attribute it to the city itself, and show a *causal link* between the execution of the policy [or custom] and the injury suffered." (emphasis added)).  In other words, it is not enough to allege the existence of a municipal policy or custom of violating *any*

---

[4] The arguments made herein mirror those made in support of dismissal in the *Alicea v. City of Philadelphia* matter, Civil Action No. 22-3437, largely because the municipal liability allegations made in this matter closely track those of the *Alicea* case.

constitutional rights, regardless of the relationship of those rights to the underlying facts of the plaintiff's case.  Rather, a plaintiff must allege facts plausibly establishing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001)).  In this respect, Plaintiff's Complaint falls woefully short: while Plaintiff alleges many customs on the part of the City, only a few of these alleged customs are even tangentially related to the conduct alleged of the individual defendant officers, such that they can plausibly be said to have a "direct causal link" to the alleged violations of Plaintiff's rights.  And as to those alleged customs that are so related, Plaintiff has not supported the existence of these customs by alleging non-conclusory factual allegations.

Plaintiff generally alleges that there was a litany of "unconstitutional municipal customs, practices, and/or policies [that] were the moving force behind [his] trial for capital murder[.]."  Compl. ¶ 70.  Setting aside the fact that Plaintiff was not tried for capital murder, Plaintiff lists the following ways in which he alleges the City had a "custom of unconstitutional conduct"— "in summary" including but not limited to:

- "engaging in unlawful interrogation of suspects";
- "unlawful witness detentions and interrogations";
- "using improper identification procedures";
- "fabricating and planting evidence";
- "fabricating witness and suspect statements";
- "failing to take appropriate disciplinary or other corrective action with respect to police officers who engaged in illegal or unconstitutional conduct"; and
- "ignoring, with deliberate indifference, systemic patterns of police misconduct and abuse of civilians' rights in the course of police investigations and prosecution s of criminal suspects and defendants, including unlawful police interrogations, searches, and arrests, coercion of witnesses, improper identification procedures, falsifying and fabricating evidence, and suppressing exculpatory evidence."

*Id.* ¶ 53.[5]

Several of these alleged customs have no direct causal connection with the violations Plaintiff alleges occurred in his case.  For example, Plaintiff does not allege that any defendant used improper identification procedures or tampered with a witness.  *See generally* Compl. Moreover, Plaintiff alleges that the one inculpatory witness he identified was coerced not by police but by another individual from the neighborhood, quite the contrary of an alleged policy that police coerced such witnesses, unlawfully detained them, or fabricated their statements.  *See generally id.*  Accordingly, even if Plaintiff had pled facts supporting the existence of the laundry list of alleged customs, policies, or practices (which he has not), the Complaint lacks any facts that would establish a "direct causal link" between such customs and any alleged violation of Plaintiff's constitutional rights. *Carswell*, 381 F.3d at 244.

As to the remaining alleged customs, the Complaint lacks non-conclusory allegations that would plausibly support their existence during the relevant time period, 1985–1990.  To be sure, Paragraph 48 of the Complaint sets out descriptions of several civil actions against PPD officers, contending that these demonstrate that "misconduct was pervasive within the PPD."  Compl. ¶ 48. But a close review of the alleged facts of these cases belies their support for the broad customs that Plaintiff contends they establish.

---

[5] Tellingly, the Complaint separately alleges that "there was a pattern, practice, and custom within [PPD] of violating the constitutional rights of criminal suspects and others, including systemic violations of the Fourth and Fourteenth Amendments."  Compl. ¶ 50. The framing of a custom in such a vague and "nebulous" manner, removed from the specific constitutional violations alleged to have occurred in his underlying case, is impermissible, because it has the effect of rendering the "direct causal link" requirement for municipal liability a dead letter. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official.").

By way of example, Plaintiff cites the conviction of Ed Williams to substantiate his claims.  *See* Compl. ¶ 48(b).  There, PPD Homicide Division detectives allegedly coerced a false statement from a witness to a robbery and murder by detaining the witness without food or water for days and by beating the witness.  *Id.*  Here, Plaintiff does not allege that detectives assaulted the inculpatory witness to coerce her statement against him or held her for days without food or water to induce an inculpatory statement.  Quite the opposite – Plaintiff expressly alleges she was threatened with death by another man if she did not provide a statement to police implicating Plaintiff in the murder.  A similar distinction can be made with the cited Percy St. George case. *Id.* ¶ 48(e).

Likewise, Plaintiff cites the conviction of Willie Veasy, alleging that Veasy was interrogated, and that a confession from him was obtained, as a result of having been isolated in an interrogation room where he was smacked around and kicked in the testicles until he confessed.  Compl. ¶ 48(d).  Here Plaintiff does not allege any such use of physical force – or any suggestion that physical force was used upon his person.  Instead, he contends that he gave and signed a confession within a 90 minute period, three hours after having been taken into custody, and that he has no specific recollection of any of it because he was blacked out from having consumed a significant quantity of narcotics.  *See generally id.*

In sum, Plaintiff's municipal liability allegations are overbroad and insufficiently focused, such that the City cannot possibly be on notice of, and defend itself against, the theories of municipal liability suggested by Plaintiff.  Merely reciting a litany of complaints leveled at PPD over a period of decades—without any regard for time limitation or relevancy to the constitutional violations alleged of the individual officers in this case—does not satisfy the demanding standards for municipal liability under § 1983.  If it did, it would be hard to imagine any alleged constitutional

violation that could not be connected to such an amorphous custom, rendering the "direct causal link" requirement for municipal liability a dead letter.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official.").  For this reason, Plaintiff's *Monell* claim set out in Count IV should be dismissed in its entirety.

> 3.   *Even if Count IV Is Not Dismissed in its Entirety, Plaintiff Cannot Establish His Failure to Intervene Claim Against the City*

While Count IV is an omnibus contention of municipal liability, one that fails in its entirety for the reasons explicated above, it implicates all the theories of liability expressed in Counts I through III.  However, properly considered as being comprised of several claims of municipal liability, Plaintiff cannot sue the City for violations of rights that were not clearly established at the time of the events at issue.  Practically speaking, and as detailed further below, this means that Plaintiff's *Monell* claim for the alleged failure to intervene claim of Count III, should be dismissed.

Since Plaintiff does not contend that the City itself facially violated federal law, his federal claims against the City cannot proceed unless he pleads deliberate indifference on the part of the City.  *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010).  Deliberate indifference "is a *stringent* standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations and quotations omitted) (emphasis added); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (noting that it is "difficult" for a plaintiff to establish deliberate indifference).

In *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007), a police officer

commanded his canine to bite and hold a suspect without first giving the suspect a warning.  *Id.*
at 388.  The district court "concluded that [the officer] had used excessive force . . . by
commanding [his dog] to . . . bite and hold, without first providing a warning."  *Id.* at 388-389.
However, the court held that the officer "was protected by qualified immunity, because the right
to a warning was not clearly established at the time of the incident."  *Id.* at 389.

On appeal, the Eighth Circuit, sitting en banc, held that the municipality which employed
the officer could not be sued under § 1983.  *Id.* at 388.  The court noted that the Fourth
Amendment right in question was not clearly established at the time of the incident, and then
stated: "[W]e agree with the Second Circuit and several district courts that a [municipality]
cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when
that right has not yet been clearly established."  *Id.* at 393 (citing several cases).  The Eighth
Circuit reasoned that a municipality "cannot properly be said to have exhibited . . . *deliberate*
indifference to constitutional rights that were not clearly established."  *Id.* at 394.  The Sixth
Circuit reached this same conclusion in dismissing the municipal liability claim in *Arrington-Bey
v. City of Bedford Heights*. 858 F.3d 988, 995 (6th Cir. 2017) (holding a municipality could not
be liable because the plaintiff's constitutional rights were not clearly established at the time of
the underlying incident); *see also Bustillos v. El Paso County Hospital District*, 891 F.3d 214,
222 (5th Cir. 2018) (holding same).

Consistent with the appellate courts in *Szabla, Bustillos,* and *Arrington-Bey*, this Court
should dismiss those of the municipal liability claims that are derivative of constitutional due
process rights that were not clearly established at the time of the actions at issue.  Given the
murky state of the law, Plaintiff cannot allege or establish that the City exhibited deliberate
indifference towards a failure to intervene, for a municipality "cannot properly be said to have

exhibited . . . *deliberate* indifference to constitutional rights that were not clearly established" in the first place. *Szabla*, 486 F.3d at 394 (emphasis in original). Therefore, Plaintiff's failure to intervene claim against the City fails as a matter of law. *See Thomas*, 290 F. Supp. 3d at 387 (following *Szabala* and holding that "[b]ecause the rights at issue in the claims for Fourteenth Amendment malicious prosecution . . . were not clearly established . . . the Court dismisses the *Monell* count as to these claims"); *see also, e.g.*, *Lewis*, 2020 WL 1683451, at *12-13 (dismissing claims against the City for withholding of evidence and Fourteenth Amendment malicious prosecution because those rights were not clearly established at the time of the investigation, arrest, and prosecution at issue in the case); *Outlaw*, 2021 WL 3471168, at *7-8 (same). This claim should be dismissed.

## IV.   Conclusion

For the reasons stated above, Defendants respectfully submit that the Court should dismiss Plaintiff's Complaint in its entirety as barred by *Heck v. Humphrey*. Alternate grounds to dismiss the Complaint, in whole are in part, include failure to allege facts sufficient to establish the personal involvement of any defendant in a constitutional harm; failure to allege facts sufficient to state two of his three claims against the individuals; and failure to allege facts sufficient to state a claim against the City.

At the very least, the Court should dismiss the claims grounded on constitutional rights that were not clearly established at the time of the alleged harms, on the basis that the Defendants are thus entitled to qualified immunity. The Court should also dismiss these claims against the City of Philadelphia.

Date:  November 4, 2022                    Respectfully submitted,

                                             /s/ *Danielle E. Walsh*

Danielle E. Walsh
Divisional Deputy City Solicitor
Pa. Attorney ID No. 312438
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-686-0464 (phone) / 215-683-5397 (fax)
danielle.walsh@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MARCO MALDONADO,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | **No. 2:22-cv-3474** |
| | : | |
| v. | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants | : | |
| | : | |

**CERTIFICATION OF COMPLIANCE**

I hereby certify that counsel for the parties in the above-captioned matter substantively discussed the pleading issues raised by way the Motion for Dismiss, and mutually recognized that the legal issues identified herein were not subject to resolution via agreement.

Date:  November 4, 2022                    Respectfully submitted,

                                           /s/ *Danielle E. Walsh*
                                           Danielle E. Walsh
                                           Divisional Deputy City Solicitor
                                           Pa. Attorney ID No. 312438
                                           City of Philadelphia Law Department
                                           1515 Arch Street, 14th Floor
                                           Philadelphia, PA 19102
                                           215-686-0464 (phone) / 215-683-5397 (fax)
                                           danielle.walsh@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARCO MALDONADO,** | : |
| | : |
| | : **CIVIL ACTION** |
| **Plaintiff,** | : **No. 2:22-cv-3474** |
| | : |
| **v.** | : |
| | : |
| **CITY OF PHILADELPHIA, et al.,** | : |
| | : |
| **Defendants** | : |
| | : |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, Defendants City of Philadelphia, Michael Cahill, Herberto Aponte, Bruce Dougherty, Bruce Denoble, Robert Ahrndt, John Broadbent and Richard Henderson's Motion to Dismiss Plaintiff's Complaint, Memorandum of Law in support thereof, Proposed Form of Order, Certificate of Compliance and this Certificate of Service were filed via the Court's electronic filing system and are available for downloading.

Date:  November 4, 2022                    Respectfully submitted,

                                           /s/ *Danielle E. Walsh*
                                           Danielle E. Walsh
                                           Divisional Deputy City Solicitor
                                           Pa. Attorney ID No. 312438
                                           City of Philadelphia Law Department
                                           1515 Arch Street, 14th Floor
                                           Philadelphia, PA 19102
                                           215-686-0464 (phone) / 215-683-5397 (fax)
                                           danielle.walsh@phila.gov