**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCO MALDONADO | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO.  22-3474** |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| DETECTIVE MICHAEL CAHILL, | : | |
| OFFICER BRUCE DOUGHERTY, | : | |
| OFFICER BRUCE DENOBLE, | : | |
| ROBERT CAMPOLONGO, A.D.A. | : | |
| JOHN DOES | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                          **July 21, 2023**

## I.    <u>Introduction</u>

The City of Philadelphia asks us to dismiss a complaint filed by Marco Maldonado, who

spent twenty-seven years in prison for a now-vacated murder conviction.  The Third Circuit

granted Mr. Maldonado leave to file a second habeas petition after he discovered that prosecutors

used evidence fabricated by police officers against him, and the same officers concealed

exculpatory evidence he could have used to defend himself.

Afterwards, the City offered Mr. Maldonado the chance to plead no contest to a lesser

third-degree murder charge.  He would not have to go through another trial, and he would not

have to spend any more time in jail.  Understandably, he pled no contest.

Now, he sues the police officers and detective involved in his first conviction for

violating his Fourteenth Amendment rights.  But what about the second conviction?  A § 1983

action may not be maintained if winning it necessarily requires showing a conviction was

unlawful.  On behalf of the officers and detective, the City argues that allowing Mr. Maldonado's

claim to proceed risks invalidating the second conviction based on the no-contest plea.

We disagree.  Accepting Mr. Maldonado's allegations as true, it is plausible that the second conviction is insulated from the conduct he claims violated his constitutional rights. Adopting the City's argument would require us to assume that the evidence that violated Mr. Maldonado's constitutional rights formed the basis of his second conviction.  While that may be true, we cannot say now.  Thus, Mr. Maldonado's Fourteenth Amendment claim will move into discovery.

So will his civil rights conspiracy claim.  Mr. Maldonado's well-pleaded allegations allow us to infer that the police officers and detective reached some sort of understanding to fabricate evidence used to convict him.

But we dismiss Mr. Maldonado's constitutional claim based on the state actors' alleged failure to intervene in his first prosecution.  Qualified immunity shields their conduct because Mr. Maldonado's right to have them intervene on his behalf was not clearly established.

Finally, Mr. Maldonado's municipal liability claim against the City will proceed to discovery — but only to the extent it is not be predicated on his failure-to-intervene cause of action.

## II.   <u>Factual Allegations</u>

On December 23, 1992, Alberto Gonzales Jr. found his father, Alberto Gonzales Sr., dead in his home.  DI 14 ¶ 11.  Someone had shot Gonzales Sr.  *Id.* ¶ 10.  Gonzales Jr.'s discovery prompted a neighbor to call the Philadelphia police.  *Id.* ¶ 12.  Officers Bruce Dougherty and Bruce DeNoble responded.  *Id.* ¶ 13.

The Homicide Division of the Philadelphia Police Department named Gonzales Jr. as the initial suspect in his father's killing.  *Id.* ¶ 19.  The police detained Gonzales Jr. for questioning.

2

*Id.* ¶ 20.  They released him about two days later.  *Id.*

Around the same time as Gonzales Sr.'s death, Marco Maldonado was charged with violating the Uniform Firearm Act.  *Id.* ¶ 12.  Mr. Maldonado — then nineteen years old — posted bail.  *Id.*  The police did not initially name Mr. Maldonado as a suspect in Gonzales Sr.'s killing.  *Id.*

But something changed.  Officers Dougherty and DeNoble — who first responded to the call regarding Gonzales Sr.'s death — filed a report dated December 24, 1992 that said they saw Mr. Maldonado near Gonzales Sr.'s house on the day of the killing.  *Id.*  They apparently observed Mr. Maldonado dispose of a handgun in an abandoned car.  *Id.*  They also claimed that Mr. Maldonado had a bullet in his pocket, however, Mr. Maldonado never possessed the handgun or bullet the officers described.  *Id.* ¶¶ 12, 14.

Later testimony from a witness named Mayra Camacho corroborated Officer Dougherty and Officer DeNoble's report.  Ms. Camacho underwent questioning about Gonzales Sr.'s death on December 26, 1992.  *Id.* ¶ 22.  Ms. Camacho said "that she heard two gunshots and observed Mr. Maldonado exit the front of Gonzales Sr.'s home."  *Id.* ¶ 23.

Eventually, the police talked to Mr. Maldonado.  *See id.* ¶ 25.  Detective Michael Cahill interrogated him for eighteen hours.  *Id.*  Mr. Maldonado was intoxicated during questioning.  *Id.* ¶ 25.  He made exculpatory and inculpatory statements to Detective Cahill.  *Id.* ¶ 26.

Supplied with some of the investigation's findings, the Philadelphia District Attorney's Office prosecuted Mr. Maldonado.  *See id.* ¶ 18.  Mr. Maldonado pled guilty to second-degree murder before trial.  *Id.* ¶ 33.  A judge sentenced him to life imprisonment.  *Id.* ¶ 34.

What Mr. Maldonado did not know during his prosecution is that the police department

and DA's office failed to disclose exculpatory information to him.  For example, the police never gave the DA's office fingerprint evidence gathered from the scene of the crime.  *Id.* ¶ 31. Detective Cahill and the police never gave him the exculpatory statements he made during his interrogation.  *Id.* ¶ 27.  And the DA's office never disclosed that Officers Dougherty and DeNoble "were dismissed for corruption only months after they participated in [his] conviction." *Id.* ¶ 32.

Despite pleading guilty, Mr. Maldonado fought to appeal his conviction.  *Id.* ¶ 35.  A breakthrough occurred in September 2017 — almost twenty-five years after Gonzales Sr.'s death.  *See id.* ¶ 29.  In September 2017, Ms. Camacho recanted her statements about Mr. Maldonado's role in Gonzales Sr.'s death.  *Id.*  And Mr. Maldonado learned for the first time that the police had named Gonzales Jr. as the initial suspect in the killing back in 1992. *Id.* ¶ 30.

Mr. Maldonado successfully obtained leave from the Third Circuit to file another habeas petition after learning of this evidence.  *Id.* ¶ 36.  The DA's office did not contest his petition. *Id.* ¶ 37.  His conviction was vacated, and the DA's office withdrew its second-degree murder charges.  *Id.*

This left Mr. Maldonado with a choice.  The DA's office offered Mr. Maldonado the option of pleading no contest to third-degree murder or going back to prison to await a new trial. *Id.* ¶ 38.  By then, Mr. Maldonado had spent twenty-seven years in prison.  *Id.* ¶ 39.  Because he could receive credit for his previously served sentence, pleading no contest meant he would be released immediately.  *Id.* ¶ 41.  So he did.

About one year after pleading no contest, Mr. Maldonado filed a complaint against those involved in his first conviction for violating his constitutional rights.  *See id.* ¶ 41; DI 1.

4

III.    **The City's Motion to Dismiss**

Mr. Maldonado sued Detective Cahill, Officer Dougherty, Officer DeNoble, Assistant District Attorney Robert Campolongo,[1] and the City of Philadelphia for violating his constitutional rights.  He asserted three causes of action against the individuals under 42 U.S.C. § 1983: (1) deprivation of due process and denial of a fair trial, (2) civil rights conspiracy, and (3) failure to intervene in an unfair trial.  *See* DI 14 at 17-19.  He also alleged that the City of Philadelphia maintains unconstitutional policies, practices, or customs that are causally connected to his injuries.  *See id.* at 19-20.

The City[2] moved to dismiss Mr. Maldonado's amended complaint for, as it submits, "a myriad of reasons."  DI 16 at 2.  First, it argues the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S 477 (1994) bars the action.  *See id.* at 5-10.  According to the City, awarding Mr. Maldonado relief would "necessarily imply the invalidity" of his third-degree murder conviction.  *Id.* at 5, 9-10.  The City confronts two other "two-conviction" cases from this district that applied *Heck* where an individual enters a subsequent (and lesser) guilty plea after a vacated conviction.  *See id.* at 6.  The City argues both courts erred in allowing the claims past the pleadings stage.  *See id.*

Second, the City argues that Mr. Maldonado cannot bring a Fourteenth Amendment deprivation-of-fair-trial claim where he pled guilty and "did not stand trial."  *Id.* at 10.[3]  Third,

---

[1] After moving to dismiss, Assistant District Attorney Campolongo and Mr. Maldonado stipulated to the dismissal of claims against him.  *See* DI 29.

[2] We refer to all defendants collectively as the City.  We will refer to the individual defendants where necessary.

[3] The City walked back this argument in its reply, citing language from the Third

the City argues that Mr. Maldonado does not adequately allege the "concerted activity" necessary to support a civil rights conspiracy claim. *Id.* at 11 (quoting *Wilkens v. Bittenbender*, 2006 WL 860140, at *19 (M.D. Pa. Mar. 31, 2006)).  Fourth, the City asserts that qualified immunity insulates Officer Dougherty, Officer DeNoble, and Detective Cahill from a failure-to-intervene claim.  *See id.* at 12-13.

Fifth, the City argues that Mr. Maldonado does not plead a plausible "causal connection" between his alleged constitutional violation and a policy, practice, or custom employed by the City.  *See id.* at 13-18.  It characterizes Mr. Maldonado's allegations as "overbroad," making it impossible to know "the theories of municipal liability" at issue.  *Id.* at 18.  The City further argues that, to the extent Mr. Maldonado's municipal liability claim is based on an alleged failure to intervene, we should dismiss the claim because the City cannot be sued "for violations of rights that were not clearly established."  *Id.* at 18.

Mr. Maldonado responded to each of the City's arguments.  First, he argues that his Fourteenth Amendment claim does not necessarily imply the invalidity of his third-degree murder conviction.  *See* DI 21 at 10-12.  He relies heavily on the court's decision in *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420 (E.D. Pa. 2019), explaining that his "theory of the case is not actual innocence, rather it is that the individual defendant[s] fabricated and concealed evidence in violation of Mr. Maldonado's rights."  *Id.* at 11-12.

Second, Mr. Maldonado rebuts the City's argument that he cannot bring a fair trial claim without having stood trial.  *Id.* at 12-13.  He directs us to the Third Circuit's decision in *Halsey v.*

_____

Circuit's decision in *Halsey v. Pfeiffer*.  750 F.3d 273, 294 n.19 (3d Cir. 2014) ("We note, however, that if fabricated evidence is used as a basis for a criminal charge that would not have been filed without its use the defendant certainly has suffered an injury.").

*Pfeiffer*, 750 F.3d 273 (3d Cir. 2014), which states that a criminal defendant "certainly has suffered an injury" where "fabricated evidence is used as a basis for a criminal *charge*." *Id.* at 13 (emphasis added) (quoting *Halsey*, 750 F.3d at 294 n.19).

Third, Mr. Maldonado insists that his allegations support a civil rights conspiracy claim, specifically, the police officers' failure to pass on key evidence to the DA's office. *See id.* at 13-15. Fourth, Mr. Maldonado argues that qualified immunity should not insulate the police officers and detective from his failure-to-intervene claim because they had a "fair and clear warning that their conduct is unlawful." *Id.* at 16 (quoting *Halsey*, 750 F.3d at 295-96).[4]

Fifth, Mr. Maldonado argues that the City adopted a policy of "deliberate indifference as to [the] known or obvious consequences" of allowing its officers to "fabricate and conceal evidence without consequence." *Id.* at 18 (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). And he argues that his failure-to-intervene claim may also serve as the basis for liability under *Monell* because he pled a plausible constitutional violation. *Id.* at 19.

We heard oral argument on the motion, *see* DI 30, and we have jurisdiction over Mr. Maldonado's claims, *see* 28 U.S.C. § 1331. The motion is ripe for disposition. For the reasons set forth below, we grant in part and deny in part the motion to dismiss.

---

[4] The City does not argue that we should dismiss Mr. Maldonado's Fourteenth Amendment fabrication-of-evidence claim on qualified immunity grounds — as clarified in its reply brief. *See* DI 24 at 4-5 ("Plaintiff seeks to recast the Defendants' argument, positing that '[m]oving [d]efendants' argument is essentially that Mr. Maldonado did not have a clearly established right to not have evidence fabricated to charge and convict him. *But that was not the position taken by Defendants*. Nor could it have been, as *Halsey* clearly controls the specific issue of fabrication of evidence." (emphasis added)); *see also Mervilus v. Union County*, 2023 WL 4526416, at ("The right at issue is the due process protection against criminal investigators' fabrication of inculpatory evidence against a defendant. . . . [T]hat right had long been recognized by the Supreme Court and Courts of Appeal, including this one.").

IV.     **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  We must use the Third Circuit's three-step test to assess the plausibility of Mr. Maldonado's claims.  First, we must note the elements that Mr. Maldonado "must plead to state a claim." *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).  Second, "we disregard rote recitals of the elements of a cause of action." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  Third, we must decide whether Mr. Maldonado's well-pleaded allegations "plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 675.

V.      **Analysis**

A. *Heck* **does not bar this action because Mr. Maldonado's § 1983 claim does not necessarily invalidate his second conviction.**

To situate our analysis of the "two-conviction" issue, it will help to recount the facts and reasoning of the Supreme Court's decision in *Heck*.

A state court convicted the petitioner in *Heck* of voluntary manslaughter. *Heck v. Humphrey*, 512 U.S. 477, 478 (1994).  In a subsequent civil suit, the petitioner accused the prosecutors and investigator of violating § 1983 by, for example, "'knowingly destroying' evidence 'which was exculpatory in nature and could have proved [his] innocence.'" *Id.* at 479.  Importantly, the petitioner sought money damages. *Id.*

The Supreme Court started by exploring the difference between "the two most fertile sources of federal-court prisoner litigation": § 1983 and habeas claims. *Id.* at 480.  While habeas

claims attack the "fact or duration" of a criminal conviction, claims for money damages related to the conviction may not. *Id.* at 481.[5]  But the Supreme Court said that, in some cases, "establishing the basis for [a] [money] damages claim" can "demonstrate[] the invalidity of [a] conviction" — just like a habeas claim's attack on a conviction's "fact or duration." *Id.* at 481-82.  And where the claim for money damages "necessarily require[s] the plaintiff to prove the unlawfulness of his conviction or confinement," the action is barred. *Id.* at 486.  Barring the action addresses the Supreme Court's concern about "collateral attack[s] on criminal judgments through civil tort vehicles such as § 1983." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (citing *Heck*, 512 U.S. at 485).

The Court then explained how to decide when a § 1983 claim "effective[ly] serve[s] as a collateral attack" on a criminal conviction. *See Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 427-28 (E.D. Pa. 2019) (discussing *Heck*).  First, courts must ask whether "a judgment in favor of the plaintiff" on a § 1983 claim "would necessarily imply the invalidity of [a] conviction or sentence." *Heck*, 512 U.S. at 487.  Second, courts must determine whether the "conviction or sentence has already been invalidated." *Id.*

"*Heck* supplie[d] four ways" to decide if a conviction or sentence has been invalidated. *Dennis*, 379 F. Supp. 3d at 428.  We must observe whether a court

_____

[5] The Court emphasized the distinction because, unlike a habeas claim, a § 1983 claimant does not have to exhaust remedies in state court. *Heck*, 512 U.S. at 481; *see id.* at 480-81 ("The federal habeas corpus statute, by contrast, requires that state prisoners first seek redress in a state forum."); *see also Bronowicz v. Allegheny County*, 804 F.3d 338, 348 n.13 (3d Cir. 2015) ("The Supreme Court particularly wanted to guard against the possibility that a broad reading of § 1983 would permit collateral attack of outstanding criminal judgments in civil proceedings in contravention of Congress' intent that prisoners first seek relief through state and federal habeas procedures.").

[1] reversed [the conviction or sentence] on direct appeal,
[2] expunged [the conviction or sentence] by executive order,
[3] declared [the conviction or sentence] invalid by a state tribunal authorized to make such determination, or
[4] called [the conviction or sentence] into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 487. "Applying these principles," the Supreme Court concluded that the petitioner's § 1983 claim "challenged the legality of" his state court conviction and affirmed the dismissal of his claim. *Id.* at 490.

The Third Circuit has termed this second part of *Heck*'s test the "favorable termination" rule. Part two asks "whether the totality of the circumstances surrounding [a state prisoner's] prior proceedings reflect a favorable outcome for the [prisoner] that would be consistent with the success of the [prisoner's] § 1983 claims." *Bronowicz v. Allegheny County*, 804 F.3d 338, 346 (3d Cir. 2015); *see also Curry v. Yachera*, 835 F.3d 373, 378-79 (3d Cir. 2016) (barring action where a plaintiff failed to allege that a prior plea of no contest — treated as the functional equivalent of a guilty plea — had been invalidated). The "favorable termination" phrase is derived from an element of a malicious prosecution claim, which the Supreme Court in *Heck* said is "the closest analogy" to a money-damages claim under § 1983. *Heck*, 512 U.S. at 484; *see also Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009).[6]

But, since *Heck*, the Third Circuit has yet to address the species of § 1983 claims like Mr. Maldonado's: where a criminal defendant's original conviction is invalidated, a second, *valid*

---

[6] Notably, the Supreme Court recently said the favorable termination test does *not* "require the plaintiff to show that [a] criminal prosecution ended with some *affirmative indication of innocence.*" *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022) (emphasis added). The Supreme Court made this conclusion within the context of a § 1983 claim for malicious prosecution.

conviction is entered, and the criminal defendant sues for money damages based on a violation of his or her constitutional rights. *See Dennis*, 379 F. Supp. 3d at 428; *see also Gladden v. City of Philadelphia*, 2022 WL 605445, at *6 (E.D. Pa. Feb. 28, 2022). Two courts in our district have faced this "two-conviction" question. They both concluded that the civil rights action "bears on the conviction in which the [constitutional] violations occurred *and not* on a subsequent conviction." *Dennis*, 379 F. Supp. 3d at 430; *Gladden*, 2022 WL 605445, at *5 ("Mr. Gladden's subsequent conviction is a 'clean conviction' and 'entirely insulated' from the previous violations because he knew of them when he pleaded no contest to third-degree murder, which has the same legal effect as a guilty plea, and he still accepted the plea."). Both courts relied on decisions from the Second and Ninth Circuits that answered the same question. *See Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) (en banc); *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014).

In *Dennis*, a former state prisoner alleged that police officers deprived him of his "Fourteenth Amendment right to due process and a fair trial" by fabricating evidence against him. *Dennis*, 379 F. Supp. 3d at 429-30. Prosecutors used the fabricated evidence to convict him of first-degree murder. *Id.* at 423. In a later en banc decision, the Third Circuit declared the prisoner's conviction was "effectively gutted" and instructed prosecutors "to set [him] free or retry him." *Id.* at 426. The prisoner accepted a no contest plea to avoid more time in prison. *Id.*

To decide whether *Heck* barred the prisoner's Fourteenth Amendment claim, the court in *Dennis* applied a "modified step one question"[7] to account for his second conviction: "what is

---

[7] The court derived the "modification" from the Second Circuit's opinion in *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) (en banc).

the effect, if any, of the particular § 1983 action on the first conviction as well as the second conviction?"  *Id.* at 429.  Step two of the court's analysis remained the same.  Analogizing the cause of action to a *Brady*[8] claim, the court said the prisoner's claim for denial of a fair trial implicated "due process" concerns — not "ultimate guilt or innocence."  *Id.* at 430; *see also Gladden*, 2022 WL 605445, at *5.[9]  And because the second conviction was "insulated" from the due process concerns stemming from the first conviction, *Heck* did not bar the action.  *Id.* at 430.

The court in *Gladden* — relying on *Dennis* — went a step further by addressing the argument that, in "two-conviction" cases, the § 1983 claim essentially "challeng[es] the evidence supporting" the second conviction.  *Gladden*, 2022 WL 605445, at *6.  The court disagreed with the argument for two reasons: (1) it prematurely focused on the damages suffered by the claimant, and (2) the court could not "go outside of the pleading to make" a "factual finding" on the evidence used in the second conviction.  *Id.* at *6-7.

Here, our starting point is applying part one of the *Heck* test.  We conclude that Mr. Maldonado's Fourteenth Amendment claim would *not* necessarily invalidate his second conviction.  His § 1983 claim challenges the evidence underpinning his *first* conviction, but the first conviction satisfies the "favorable termination" rule because it is already vacated.  Mr.

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

[9] "This view is supported by language in *Heck* itself which suggested that because of doctrines such as independent source or inevitable discovery a civil claim for unlawful search might not necessarily imply that the conviction was unlawful."  *Tempest v. Remblad*, 2022 WL 2817865, at *9 (D.R.I. July 19, 2022) (citing *Heck*, 512 U.S. at 487 n.7); *see also Thompson v. Clark*, 142 S. Ct. 1332, 1342 (2022) (Alito, J., dissenting) (citing *Heck*, 512 U.S. at 487 n.7) ("[T]he validity of an unreasonable-seizure claim is not dependent on the outcome of any prosecution that happens to follow a seizure.  A person who is arrested without probable cause but then convicted based on evidence discovered after the arrest is not barred from recovering simply because he or she cannot show a favorable termination to the proceeding.").

Maldonado does not, as the City argues, try to establish innocence from his *second* conviction —
making this more like the type of claims the Supreme Court said "would *not* necessarily imply
that the plaintiff's conviction was unlawful." *See Heck*, 512 U.S. at 487 n.7; *see also Gladden*,
2022 WL 605445, at *6. The City unpersuasively tries to frame Mr. Maldonado's claim as one
rooted in actual innocence, compared to the "procedural harms" in *Jackson* and *Poventud*.[10]

We also decline to consider — at the pleadings stage — whether the evidence used for
Mr. Maldonado's second conviction is the same as his first conviction. If anything, it is
plausible that Mr. Maldonado knew *before* pleading no contest that the fabricated evidence
would play no part in his second conviction. *See Jackson*, 749 F.3d at 760 ("It is undisputed that
the second conviction was insulated from the [procedural violations] that are the subject of
Jackson's § 1983 suit against Barnes.").

At oral argument, the City advanced a more nuanced invitation to consider the evidence
supporting Mr. Maldonado's second conviction. The argument also angles to distinguish
procedural, *Brady*-type claims (where a demonstration of innocence is not required) from

---

[10] Mr. Maldonado may claim that he "did not commit" the crime he pled guilty to, DI 14
¶ 1, but we consider this "inartful" pleading that does not impact his ability to state a plausible
claim. *Gladden*, 2022 WL 605445, at *6. Regardless, the Third Circuit — when recognizing a
Fourteenth Amendment fabrication-of-evidence claim for the first time — stated there must be a
"*reasonable likelihood* that, without the use of that evidence, the defendant would not have been
convicted." *Halsey*, 750 F.3d at 294 (emphasis added). "Reasonable likelihood," according to
the Third Circuit, equates to "draw[ing] a meaningful connection between the[] conviction and
the use of fabricated evidence." *Id.* at 294 n.19. Thus, *Halsey* does not explicitly require Mr.
Maldonado to establish a "but-for" relationship between the fabricated evidence and his first
conviction to state a plausible claim. Rather, he must "meaningful[ly] connect[]" the evidence
with his conviction. *Id.* This differs from requiring a demonstration of innocence.
        Moreover, the Supreme Court's recent decision in *Thompson* — albeit in the context of a
malicious prosecution claim — said that an "affirmative indication of innocence" is not a
prerequisite to satisfying the "favorable termination" test. *Thompson*, 142 S. Ct. at 1341.

fabrication-of-evidence claims. It starts with the inference — from Mr. Maldonado's complaint — that the sole evidence used for his first conviction is the evidence he now claims was fabricated. If true, according to the City, the factual predicate for Mr. Maldonado's no contest plea would consist of nothing but fabricated evidence. And if an element of a "procedural" claim — here, Mr. Maldonado's fabrication-of-evidence claim — essentially requires a plaintiff to undermine a fact or evidence supporting a conviction, *Heck* applies. In support of this argument, the City cited *Poventud*, which said *Heck* would bar a § 1983 claim if an "*element* of [the] § 1983 *Brady* claim requires [the claimant] to prove his absence from the scene of the crime." *Poventud*, 750 F.3d at 138 (emphasis added).

This argument carries some weight and could present problems for Mr. Maldonado, but not right now. Logically, if Mr. Maldonado's second conviction was entered on the basis of only the evidence he now claims was fabricated, success on his fabrication-of-evidence claim could invalidate the *factual* basis on which the second conviction stands. Indeed, Mr. Maldonado's Fourteenth Amendment claim will require him to demonstrate that "there is a reasonable likelihood that, without the use of that evidence, [he] would not have been convicted." *Halsey*, 750 3d. at 294. But discovery — not the pleadings — will tell us whether the City's argument has merit. For now, we must hold that Mr. Maldonado's complaint raises the plausible inference that the evidence he complains of was not foundational to his second conviction.

For these reasons, *Heck* does not bar Mr. Maldonado's claim.

## B.  We grant in part and deny in part the City's motion to dismiss Mr. Maldonado's § 1983 claims.

With *Heck* behind us for now, we next analyze the plausibility Mr. Maldonado's claims for relief. Their common thread is § 1983. Through § 1983, Congress "provides litigants an

14

avenue to obtain money damages where state and local officials violate their federal constitutional or statutory rights." *Coello v. DiLeo*, 43 F.4th 346, 351 (3d Cir. 2022).

We must decide whether two "essential elements . . . are present: '(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the constitution or laws of the United States.'" *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Here, the City challenges the sufficiency of prong two as pled.

1. The City does not contest Mr. Maldonado's ability to plausibly allege a meaningful connection between the fabricated evidence used against him and his second-degree murder conviction.

As noted above, the City rescinded its main argument against Mr. Maldonado's fabrication-of-evidence claim. It originally argued that Mr. Maldonado cannot state a claim because he was not *convicted at trial* of second-degree murder. DI 16 at 10. But the argument contravenes language from the Third Circuit plainly stating that a "defendant certainly has suffered an injury" where "fabricated evidence is used as a basis for a criminal charge that would not have been filed without its use." *Halsey*, 750 F.3d at 294 n.19.[11] The City does not contest this point, therefore, Count I of Mr. Maldonado's complaint will move to discovery.

2. Mr. Maldonado plausibly alleges that Officer Dougherty, Officer DeNoble, and Detective Cahill agreed to conceal and fabricate evidence used to support his second-degree murder conviction.

---

[11] *See also Mervilus*, 2023 WL 4526416, at *5 ("For [party claiming fabrication of evidence] to withstand [a] motion for summary judgment, he must bring 'persuasive evidence supporting a conclusion that [the defendant was] aware that evidence is incorrect or that [it was] offered in bad faith.'" (fourth alteration in original) (quoting *Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016))).

A plausible civil rights conspiracy claim requires allegations that a defendant "and at least one of the state actors named as defendants in their complaint somehow reached an understanding" to deprive someone of their constitutional rights.  *Kost*, 1 F.3d at 185.  The complaint "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009); *see Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a 'meeting of the minds.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970))).  The factual basis may come from allegations stating "the approximate time when the agreement was made, the specific parties to the agreement . . . the period of the conspiracy, or the object of the conspiracy."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).

Civil rights conspiracy claims normally survive a motion to dismiss where the constitutional claims do too.  *See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 446 (3d Cir. 2005); *see also Gladden*, 2022 WL 605445, at *8 (denying motion to dismiss civil rights conspiracy claim "to the extent premised on . . . claims for fabrication of evidence and deliberate deception"); *Thorpe v. City of Philadelphia*, 2020 WL 5217396, at *12-15 (E.D. Pa. Sept. 1, 2020) (allowing conspiracy claims as to all but one state actor where fabrication-of-evidence claims survived motion to dismiss); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022) (denying motion to dismiss conspiracy claim where allegations "support[ed] a reasonable conclusion that . . . [d]efendants had a meeting of the minds to arrest and assist in the prosecution of [criminal defendant] in the absence of probable cause and based on falsified evidence").

Here, Mr. Maldonado plausibly alleges that Officer Dougherty, Officer DeNoble, and Detective Cahill reached an understanding to deprive him of his right to a fair trial.  The only wrinkle in our analysis — presented during oral argument — is that an alleged conspirator, ADA Campolongo, has been dismissed from the action.  *See* DI 29.  It follows, according to the City, that the conspiracy claim fails because the main allegations of agreement and concerted action focus on the information received by ADA Campolongo that deprived Mr. Maldonado of his Fourteenth Amendment rights.

Regardless of ADA Campolongo's dismissal, the amended complaint still affords the plausible inference that the police officers and Detective Cahill reached an understanding during their investigation about the evidence they would or would not present to the DA's office.  And the allegations suggest concerted action by each individual to further the object of the conspiracy.  *See* DI 14 ¶¶ 13, 26-27, 30.  Therefore, we deny the City's motion to dismiss Count II of Mr. Maldonado's complaint.

3. Mr. Maldonado did not have a clearly established right for Officer Dougherty, Officer DeNoble, or Detective Cahill to intervene in his prosecution, thus, qualified immunity applies.

The Third Circuit has recognized that a state actor may violate someone's constitutional rights by "fail[ing] to intervene in a beating."  *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  But it has not "extended failure-to-intervene liability to," for example, a state actor "if he 'observes or has reason to know' of a false arrest and has 'a realistic opportunity to intervene.'" *Lozano v. New Jersey*, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (quoting *Bunkley v. City of Detroit*, 902 F.3d 552, 565-66 (6th Cir. 2018)).

And "the judicially created doctrine of qualified immunity" may protect a state actor

17

against constitutional claims based on a failure to intervene.  *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021).  Courts ask two questions to decide whether qualified immunity applies: (1) "do the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 212 (2001).  We may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Supreme Court answers question two of the qualified immunity analysis by considering whether it was "sufficiently clear 'that every "reasonable official would [have understood] that what he is doing violates that [constitutional] right."'"  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (first alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  This means not "defin[ing] clearly established law at a high level of generality."  *Ashcroft*, 563 U.S. at 742.  Rather, the clearly established "legal principle . . . must be based on precedent existing at the time of the official's act."  *Weimer v. County of Fayette*, 972 F.3d 177, 191 (3d Cir. 2020).  And to find that precedent, we "first look[] to factually analogous Supreme Court precedent," then "binding opinions from" the Third Circuit, followed by other Courts of Appeals and "district court cases from within the Third Circuit or elsewhere."  *Peroza-Benitez*, 994 F.3d at 165-66.

Turning to the Third Circuit, it has held that a district attorney was entitled to qualified immunity from a claim alleging a "fail[ure] to intervene to prevent improper investigatory conduct by police."  *Weimer*, 972 F.3d at 191.  In *Weimer*, the district attorney argued that "no clearly established [law] existed to put [her] on notice that, as a prosecutor, her failure to

intervene in the police investigation would violate [the plaintiff's] rights." *Id.* at 191.  The Third Circuit dismissed the plaintiff's effort to "refram[e] . . . the constitutional violation . . . at a high level of generality" as a "right to be free from a reckless and deliberately indifferent police investigation" that spanned three years.  *Id.* at 191-92.  Rather, the Third Circuit found no legal precedent clearly "plac[ing] the constitutional question [the district attorney] confronted" — "tak[ing] reasonable steps to protect [the plaintiff] from an unconstitutional police investigation" — "beyond debate."  *Id.* at 192 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

When the inverse scenario is presented — police officers allegedly failing to intervene in a prosecution — courts have shared the same concern as the Third Circuit in *Weimer* that the "clearly established" law is defined too generally.  *See, e.g.*, *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022); *Onyiah v. City of Philadelphia*, 2023 WL 2467863, at *6 (E.D. Pa. Mar. 10, 2023); *Outlaw v. City of Philadelphia*, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021); *Thorpe v. City of Philadelphia*, 2020 WL 5217396, at *11 (E.D. Pa. Sept. 1, 2020).  Unlike failing to intervene in the use of excessive force, which presents a "fleeting moment in time [for] an officer" to stop "unconstitutional physical action," extending a duty to intervene "for the entire duration of [an] investigation and prosecution" impermissibly broadens the scope of a clearly established right.  *Thorpe*, 2020 WL 5217396, at *10.

Here, the parties' arguments focus on question two of a qualified immunity analysis: whether the police officers' and Detective Cahill's obligation to intervene in Mr. Maldonado's prosecution was clearly established.  It was not.  We have no basis to conclude that the individuals clearly knew at the time that their contemporaneous failure to step into Mr.

Maldonado's prosecution would have violated his constitutional rights.  Holding otherwise

would impose a general duty to intervene over the lifespan of a prosecution, which the Third

Circuit in *Weimer* cautioned against doing.  We join the other courts in our district faced with

similar challenges to failure-to-intervene claims by concluding that qualified immunity applies.

    4.  <u>Mr. Maldonado's *Monell* claim may proceed to discovery, but not insofar as it may be based on his failure-to-intervene claim.</u>

The Third Circuit has said "a § 1983 claim against a municipality may proceed in two

ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  Route one is "put[ting] forth that an

unconstitutional policy or custom of the municipality" injured a claimant. *Id.*  The policy or

custom must have "a direct causal link" to "the alleged constitutional deprivation." *City of*

*Canton v. Harris*, 489 U.S. 378, 385 (1989).  Route two is alleging that injuries "were caused by

a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.*

(quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).  Route two

imposes "the separate, but equally demanding requirement of demonstrating a failure or

inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106.

Here, as the City points out, Mr. Maldonado does not "substantively contest[]" the

argument that he cannot predicate his *Monell* claim on a right that is not "clearly established."

DI 24 at 5.  Mr. Maldonado's only meaningful response is that he has alleged a plausible

Fourteenth Amendment violation "for fabrication and concealment of evidence."  DI 21 at 19.

Because Mr. Maldonado does not dispute the City's argument, we dismiss the *Monell* claim to

the extent it is based on a failure to intervene.[12]

---

[12] The City fairly says this area of the law is "murky."  DI 16 at 20.  And it accurately

Nevertheless, the City concedes in its reply that Mr. Maldonado's *Monell* claim may

proceed to discovery based on the City's "policy, practice, or custom of unconstitutional

misconduct in homicide investigations" — with particular conduct cited.  DI 24 at 6, 7.

---

points to several courts that have held a municipality cannot be "deliberately indifferent" to a constitutional right that is not clearly established.  *See, e.g.*, *Stokes v. City of Philadelphia*, 2023 WL 362006, at *9 (E.D. Pa. Jan. 23, 2023) ("While the Third Circuit has not addressed the issue, '[s]everal courts of appeals have held that if a right is *not* clearly established, a municipal entity cannot be deliberately indifferent to it.'"); *Onyiah v. City of Philadelphia*, 2023 WL 2467863, at *9 (E.D. Pa. Mar. 10, 2023) (similar); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 276 (E.D. Pa. 2022) (similar).

But we see a divergent line of reasoning regarding "deliberate indifference" to a right not "clearly established" — one that does not "conflat[e]" the standards of "qualified immunity and municipal liability."  *Crosland v. City of Philadelphia*, 2023 WL 3898855, at *12 (E.D. Pa. June 8, 2023).  The Third Circuit in *Forrest* went to some pains to bifurcate its analysis of *Monell* claims based on policies or customs from those based on a "failure or inadequacy" on the municipality's behalf.  *Forrest* explained that the district court "incorrectly" interpreted its prior decisions by infusing a "deliberate indifference" requirement into claims based on an unconstitutional policy or custom.  *See Forrest*, 930 F.3d at 107; *id.* at 106 n.9 ("However, contrary to what the District Court's opinion suggests, neither *Beck* nor *Simmons* established a species of § 1983 municipal liability predicated on the existence of an unconstitutional policy or custom of or amounting to deliberate indifference.").  *But see Kelly v. Borough of Carlisle*, 622 F.3d 248, 263-64 (3d Cir. 2010) ("Instead, he asserts that a showing of deliberate indifference is required only for failure to train claims, and is not required for imposition of liability based on policy or custom.  *This assertion is incorrect.*" (emphasis added)); *Ogrod*, 598 F. Supp. 3d at 275 (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)) ("[W]hile the deliberate indifference standard originally applied to failure to train cases, it has been adopted 'in other policy and custom contexts.'").

*Forrest*'s careful bifurcation suggests that we should steer clear of a deliberate indifference requirement when a policy or custom allegedly deprives someone of their constitutional rights.  And without a deliberate indifference requirement, it is unclear whether the constitutional right at issue must be "clearly established" for *Monell* liability to attach.  Several courts in this district linked together the "clearly established" prong of qualified immunity to the "deliberate indifference" standard under *Monell*.  But as the court in *Crosland* noted, the Third Circuit has "found that individual defendants were entitled to qualified immunity because the relevant right was not clearly established, but nonetheless remanded the municipal liability issue to the district court."  *Crosland*, 2023 WL 3898855, at *13 (first citing *Fields v. City of Philadelphia*, 862 F.3d 353, 362 (3d Cir. 2017); then citing *Barna v. Bd. of Sch. Dirs. Of Panther Valley Sch. Dist.*, 877 F.3d 136, 150 (3d Cir. 2017)).

Here, Mr. Maldonado has not pressed the issue, so this opinion should not be read as an endorsement of the City's point of view.

Therefore, we deny the City's motion to dismiss only for this specific theory of liability.

**VI.**     **Conclusion**

We hold the following:

- *Heck* does not bar Mr. Maldonado's claims for relief.

- The City's motion to dismiss Count I (Fourteenth Amendment violation) of Mr. Maldonado's amended complaint is **DENIED**.

- The City's motion to dismiss Count II (civil rights conspiracy) of Mr. Maldonado's amended complaint is **DENIED**.

- The City's motion to dismiss Count III (failure to intervene) of Mr. Maldonado's amended complaint is **GRANTED with prejudice**.

- The City's motion to dismiss Count IV (*Monell*) of Mr. Maldonado's amended complaint is **GRANTED in part**, only to the extent it is predicated on his failure-to-intervene claim.